**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**George L. PHELPS, also known as George L. Phillips, also known as Phillip Lee Morris, Defendant–Appellant.**

**No. 92–3197.**

United States Court of Appeals,
Tenth Circuit.

Feb. 28, 1994.

Charles D. Anderson (Michael L. Harris, Assistant Federal Public Defender), Kansas City, Kansas, for defendant-appellant.

Lee Thompson (Christina L. Morris, Assistant United States Attorney), Kansas City, Kansas, for plaintiff-appellee.

Before BRORBY and KELLY, Circuit Judges, and BRIMMER *, District Judge.

BRIMMER, District Judge.

Appellant George L. Phelps ("Phelps") appeals from the enhanced sentence imposed by the district court pursuant to § 924(e) of the Armed Career Criminal Act of 1984, 18 U.S.C. § 924(e) (1988) ("ACCA"), raises two issues. First, he alleges that the district court erred in finding that the United States proved that he had been convicted of three prior violent felonies, a necessary prerequisite to receiving an enhanced sentence under the statute. In the alternative, he contends that the district court erred in upholding the constitutionality of § 921(a)(20) of the ACCA, as applied in § 924(e), against his claim that the classifications in those statutes violate the equal protection component of the Fifth Amendment. Finding no merit to appellant's contentions, we affirm the sentence of the district court.

The factual background of this case is undisputed. On December 18, 1991, Phelps was indicted in the District of Kansas in a two count indictment. Count I charged him with unlawful possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) (1988), and count II charged him with possession of an unregistered firearm, a sawed-off shotgun, in violation of 26 U.S.C. § 5861(d) (1988). On January 10, 1992, the United States filed an Information of Previous Convictions, indicating its intent to seek an enhanced sentence pursuant to 18 U.S.C. § 924(e).[1] The request for an enhanced sentence was based on the fact that Phelps had five prior convictions, which were for second degree burglary in 1975, second degree burglary in 1981, kidnapping in 1982, escape from confinement in 1982, and carrying a concealed weapon.[2]

As part of a plea agreement with the United States, Phelps agreed to plead guilty to count I of the indictment in exchange for dismissal of count II of the indictment. On March 2, 1992, the district court accepted the guilty plea on count I and set Phelps' sentencing for May 18, 1992.

On May 7, 1992, Phelps' appointed counsel filed a sentencing memorandum raising the two arguments that he now raises before this court: that sentencing enhancement was unavailable in this case because the United States failed to prove that Phelps had three prior convictions for violent felonies, and, in the alternative, that application of the classifications in § 921(a)(20) applied through § 924(e) was a violation of equal protection as applied to him. The United States filed its opposition to appellant's sentencing memorandum one week later.

At sentencing, the district court concluded that appellant's first four convictions were violent felonies, as that term is defined in the ACCA, that Phelps was properly categorized as an armed career criminal, and that he was therefore subject to an enhanced sentence. The court also found that the statute and its application to Phelps did not violate equal protection, and thereafter, imposed a sentence of two hundred and ten (210) months imprisonment under § 924(e)(1).

After the entry of judgment and the imposition of sentence, appellant filed a timely notice of appeal pursuant to Rule 4(b) of the Federal Rules of Appellate Procedure. We

---

\* The Honorable Clarence A. Brimmer, United States District Judge for the District of Wyoming, sitting by designation.

1. The text of the statute is set forth *infra* at page 1337. It is sufficient at this time to note that § 924(e) provides that an individual who has at least three prior convictions, for either "violent felonies" or "serious drug offenses," as those phrases are defined in the statute, is subject to, *inter alia,* an enhanced sentence of "not less than fifteen years" without the possibility of parole. 18 U.S.C. § 924(e)(1) (1988).

2. The record does not specify the year of Phelps' conviction for carrying a concealed weapon.

have jurisdiction [3] pursuant to 28 U.S.C. § 1291 (1988).

## Standard of Review

We review the district court's conclusions of law regarding the interpretation of this statute *de novo. See United States v. Johnson,* 973 F.2d 857, 859 (10th Cir.1992); *United States v. Strahl,* 958 F.2d 980, 983 (10th Cir.1992) (citing *United States v. Barney,* 955 F.2d 635, 638 (10th Cir.1992)); *United States v. Tisdale,* 921 F.2d 1095, 1098 (10th Cir. 1990), *cert. denied,* —— U.S. ——, 112 S.Ct. 596, 116 L.Ed.2d 619 (1991); *United States v. Irvin,* 906 F.2d 1424, 1426 (10th Cir.1990). The district court's factual findings, however, are subject to more deferential review under the "clearly erroneous" standard. *See United States v. Easterling,* 921 F.2d 1073, 1077 (10th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2066, 114 L.Ed.2d 470 (1991); *United States v. Lord,* 907 F.2d 1028, 1031 (10th Cir.1990). As a result, the district court's findings of fact will not be disturbed unless they are "without factual support in the record, or if after reviewing all the evidence we are left with the definite and firm conviction that a mistake has been made." *United States v. Beaulieu,* 893 F.2d 1177, 1182 (10th Cir.), *cert. denied,* 497 U.S. 1038, 110 S.Ct. 3302, 111 L.Ed.2d 811 (1990).

## Discussion

We divide our discussion of Phelps' claims into two parts. First, we analyze whether the trial court erred in concluding that Phelps' prior convictions were violent felonies, thus subjecting him to enhanced punishment under § 924(e). Second, we analyze whether the trial court erred in concluding that the statutory classifications embodied in 18 U.S.C. § 921(a)(20), and applied through 18 U.S.C. § 924(e), did not violate equal protection in this case.

## I.

### A. The Text of the Statute

The starting point for our analysis must, of course, be the plain language of the statute itself. *Central Trust Co. v. Official Creditors' Comm. of Geiger Enters.,* 454 U.S. 354, 359–60, 102 S.Ct. 695, 697–98, 70 L.Ed.2d 542 (1982) (*per curiam*) (quoting *Caminetti v. United States,* 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917)); *see also Rubin v. United States,* 449 U.S. 424, 430, 101 S.Ct. 698, 701, 66 L.Ed.2d 633 (1981) ("When we find the terms of a statute unambiguous, judicial inquiry is complete."). Section 924(e) of the Armed Career Criminal Act of 1984 provides:

(1) In the case of a person who violates subsection 922(g) of this title and has three previous convictions by any court ... for a *violent felony* or a serious drug offense, or both, ... such person shall be fined not more than $25,000 and *imprisoned not less than fifteen years* ... and such person shall not be eligible for parole with respect to the sentence imposed under this subsection.

. . . .

(2) As used in this subsection—

. . . .

(B) the term 'violent felony' means any crime punishable by imprisonment for a term exceeding one year ... that—

(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or

(ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another. . . .

18 U.S.C. § 924(e) (1988) (emphases added).[4]

■■■■ It is apparent from the plain language of the statute that the enhanced sentencing provision mandates that any individu-

---

**3.** *See, e.g., Midland Asphalt Corp. v. United States,* 489 U.S. 794, 798, 109 S.Ct. 1494, 1497, 103 L.Ed.2d 879 (1989) (stating that a criminal conviction does not become an appealable final judgment until "after conviction and imposition of sentence."); *see also Flanagan v. United States,* 465 U.S. 259, 263, 104 S.Ct. 1051, 1053, 79 L.Ed.2d 288 (1984); *Berman v. United States,*

302 U.S. 211, 212, 58 S.Ct. 164, 165, 82 L.Ed. 204 (1937).

**4.** The statute, initially passed in 1984 as § 1202(a), was amended in 1986 to its present form under § 924(e).

al who has been convicted of three or more specified offenses be sentenced to "not less than fifteen years" with no possibility of parole.[5] Moreover, we have consistently adhered to the view that § 924(e) is merely a penalty enhancement statute and does not create a new substantive federal crime. *See, e.g., Johnson,* 973 F.2d at 859; *United States v. Gregg,* 803 F.2d 568, 570 (10th Cir.1986). This view accords with that taken by every other circuit court that has addressed this issue, many of which cite *Gregg* as a leading authority for this proposition. *See, e.g., United States v. Ruo,* 943 F.2d 1274 (11th Cir.1991) (citing *United States v. McGatha,* 891 F.2d 1520, 1522-27 (11th Cir.), *cert. denied,* 495 U.S. 938, 110 S.Ct. 2188, 109 L.Ed.2d 516 (1990)); *United States v. Wolak,* 923 F.2d 1193, 1198-99 (6th Cir.), *cert. denied,* — U.S. —, 111 S.Ct. 2824, 115 L.Ed.2d 995 (1991); *United States v. Fields,* 923 F.2d 358, 360 n. 4 (5th Cir.1991);[6] *United States v. Rumney,* 867 F.2d 714, 717-19 (1st Cir.1989); *United States v. Lowe,* 860 F.2d 1370, 1375-81 (7th Cir.1988), *cert. denied,* 490 U.S. 1005, 109 S.Ct. 1639, 104 L.Ed.2d 155 (1989); *United States v. Elem,* 845 F.2d 170, 174-75 (8th Cir.1988) (citing *United States v. Rush,* 840 F.2d 574, 577-78 (8th Cir.) (*en banc*), *cert. denied,* 487 U.S. 1238, 108 S.Ct. 2908, 101 L.Ed.2d 940 (1988)); *United States v. Blannon,* 836 F.2d 843, 844-45 (4th Cir.), *cert. denied,* 486 U.S. 1010, 108 S.Ct. 1741, 100 L.Ed.2d 204 (1988); *United States v. West,* 826 F.2d 909, 911 (9th Cir. 1987); *United States v. Jackson,* 824 F.2d 21, 23-26 (D.C.Cir.1987), *cert. denied,* 484 U.S. 1013, 108 S.Ct. 715, 98 L.Ed.2d 665 (1988); *United States v. Hawkins,* 811 F.2d 210, 217-18 (3d Cir.), *cert. denied,* 484 U.S. 833, 108 S.Ct. 110, 98 L.Ed.2d 69 (1987).

■ Because § 924(e) does not create an indictable offense, but merely enhances the level of punishment, it follows *a fortiori* that the prosecution is not required to prove that a defendant committed each and every element of the predicate offenses "beyond a reasonable doubt." *See, e.g., McGatha,* 891 F.2d at 1521-27 (discussing why the beyond a reasonable doubt standard is inapplicable in the context of proving that an individual committed the predicate offenses under § 924(e)); *West,* 826 F.2d at 911. The predicate offenses are treated as necessary findings of fact that the trial court must find before the enhancement provision may be applied. As a result, the trial court is simply required to find that the defendant was convicted of the prior offenses by a preponderance of the evidence. *See Johnson,* 973 F.2d at 861 (citations omitted); *cf. United States v. Rutter,* 897 F.2d 1558, 1560 (10th Cir.) (noting that "the quantity of proof required for factual determinations under the Sentencing Guidelines is a preponderance of the evidence"), *cert. denied,* 498 U.S. 829, 111 S.Ct. 88, 112 L.Ed.2d 60 (1990); *accord East-*

---

**5.** As we have stated:

> [o]nce the sentencing court was aware that the requirements of § 924(e)[ ] were satisfied, the enhancement was mandatory. The statute does not ... vest discretion in the sentencing court not to apply its mandate.

*Johnson,* 973 F.2d at 860; *see also United States v. Anderson,* 921 F.2d 335, 3371 (1st Cir.1990) ("The plain language of the [statute] does not admit of any such discretion [not to impose an enhanced sentence].") (footnote omitted).

The notion that a trial judge lacks *judicial* discretion over the decision whether to impose an enhanced sentence must be distinguished from the *prosecutorial* discretion to seek an enhanced sentence that we recognized in *United States v. Jackson,* 903 F.2d 1313, 1321 (10th Cir.1990).

In *Jackson,* we acknowledged that the prosecution retains its traditionally broad discretion in deciding whether to seek an enhanced sentence under the statute. *Id.* This is entirely different, however, from saying that once the necessary preconditions have been met, the trial court retains discretion to disregard the plain language of the statute and not impose an enhanced sentence. *See Anderson,* 921 F.2d at 337 n. 2.

Once this distinction is recognized, it becomes apparent that the holdings of *Johnson* and *Jackson* are in complete harmony.

**6.** The Fifth Circuit initially held that § 1202(a), the predecessor to § 924(e), did in fact create a separate substantive offense. *See United States v. Davis,* 801 F.2d 754, 755 (5th Cir.1986). More recent decisions from that circuit, however, make it clear that the Fifth Circuit interpreted the amendments to the predecessor statute as specifically intended to make § 924(e) merely a sentencing enhancement provision and not to create a separate, indictable offense. *See, e.g., United States v. Quintero,* 872 F.2d 107, 110 (5th Cir.1989); *United States v. Affleck,* 861 F.2d 97, 98-99 (5th Cir.1988). These holdings put the Fifth Circuit in line with its sister circuits.

*erling*, 921 F.2d at 1077; *United States v. Kirk*, 894 F.2d 1162, 1163 (10th Cir.1990).

The Supreme Court recently had an opportunity to review the history and background that led to the enactment of § 924(e) of the ACCA in *Taylor v. United States*, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990). In *Taylor*, the Court noted that the enhanced sentence portion of the ACCA was "intended to supplement the States' law enforcement efforts against 'career' criminals." *Id.* at 581, 110 S.Ct. at 2149. The Court pointed out that the reason Congress focused on so-called career offenders by enacting this statute was because such individuals, by their very nature, present "at least a threat of potential harm to persons." *Taylor*, 495 U.S. at 587–88, 110 S.Ct. at 2152. More specifically, the Court stated that the crime of burglary was expressly included as a predicate offense to the receipt of an enhanced sentence because of its *"inherent* potential for harm to persons." *Id.* at 588, 110 S.Ct. at 2152 (emphasis added).

While § 1202(a), the predecessor statute, specifically defined the elements of certain crimes, including robbery and burglary, that could subject an individual to an enhanced sentence, the 1986 amendments to the ACCA omitted a specific definition of those or any other crimes. This absence of a definition of the essential elements of certain offenses is potentially problematic because many of the predicate convictions are likely to be state law offenses whose essential elements will almost assuredly differ from one state to the next, with the obvious potential for disparate results.[7]

In *Taylor*, the Supreme Court was faced with one aspect of this problem. The Court was called on to determine the appropriate definition of the crime of burglary for purposes of the enhanced sentencing statute.[8] The Supreme Court granted certiorari and

vacated the decision of a divided panel of the Eighth Circuit. The panel concluded that the use of the word "burglary" in the statute "means 'burglary' however a state chooses to define it[.]" *United States v. Taylor*, 864 F.2d 625, 627 (8th Cir.1989), *vacated and remanded*, 495 U.S. at 602, 110 S.Ct. at 2160; *see also United States v. Leonard*, 868 F.2d 1393, 1395–97 (5th Cir.1989) (looking to state law to define burglary).

■ The Court first pointed out that the word "burglary" appeared in a federal statute and was therefore subject to federal interpretation independent of state law. *See Taylor*, 495 U.S. at 592, 110 S.Ct. at 2154; *see also Barney*, 955 F.2d at 640 (noting that *Taylor* adopted a "federal definition of burglary."). Adhering to its prior precedents on this point, the Court then declared that "[w]ithout a clear indication that with the 1986 amendment Congress intended to abandon its general approach of using *uniform categorical definitions* to identify predicate offenses, we do not interpret Congress' omission of a definition of 'burglary' in a way that leads to odd results ..." *Taylor*, 495 U.S. at 591, 110 S.Ct. at 2154 (emphasis added) (citing *Dickerson v. New Banner Institute*, 460 U.S. 103, 119–20, 103 S.Ct. 986, 995–96, 74 L.Ed.2d 845 (1983) (stating that absent a clear indication to the contrary, federal laws should not be construed so that their application is dependent on state law "because the application of federal legislation is nationwide and at times the federal program would be impaired if state law were to control.")); *accord United States v. Turley*, 352 U.S. 407, 411, 77 S.Ct. 397, 398, 1 L.Ed.2d 430 (1957). The Supreme Court then concluded that the term "burglary," as used in this statute, should be given its "generic" definition, rather than using its antiquated common-law definition.[9] The Court then concluded that:

---

7. As the Supreme Court noted in *Taylor*, the State of Michigan has no offense formally labelled "burglary." In contrast, the State of California defines the crime of burglary in a very broad, sweeping manner. Thus, if the definition of burglary was left to the "vagaries of state law," *Taylor*, 495 U.S. at 588, 110 S.Ct. at 2152, then an individual sentenced in California for three prior burglaries might receive an enhanced sentence while an individual with the same crim-

inal record in Michigan would not. *See id.* at 591, 110 S.Ct. at 2154.

8. The answer to this question is particularly relevant because two of the appellants' five convictions were for that crime.

9. Other Supreme Court decisions have recognized that a more generic definition of a crime used in a federal statute was preferable to using

a person has been convicted of burglary for purposes of a § 924(e) enhancement if he is convicted of any crime, regardless of its exact definition or label, *having the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime.*

*Taylor,* 495 U.S. at 599, 110 S.Ct. at 2158 (emphasis added).

*Taylor*'s analysis in determining whether an individual had been convicted of the required predicate offenses has been referred to as a "categorical approach." As we stated in *Barney,* the categorical approach:

> requires a comparison of the elements of the relevant state statute with the basic elements of burglary identified in the *Taylor* decision. If the relevant statute is in substantial accord with the definition adopted in *Taylor,* the conviction may be used for enhancement purposes.

*Barney,* 955 F.2d at 638. This approach has been both adopted, as it must be, and endorsed, in this circuit. *See, e.g., United States v. Amos,* 984 F.2d 1067, 1070–71 (10th Cir.1993); *United States v. Permenter,* 969 F.2d 911, 913–14 (10th Cir.1992); *Barney,* 955 F.2d at 638. The categorical approach requires a court to focus on the specific elements of the particular offense, and not the underlying facts of the conviction. *See, e.g., Taylor,* 495 U.S. at 588, 110 S.Ct. at 2152; *Strahl,* 958 F.2d at 983; *United States v. Maines,* 920 F.2d 1525, 1528 (10th Cir. 1990), *cert. denied,* —— U.S. ——, 112 S.Ct. 263, 116 L.Ed.2d 216 (1991). Regardless of a particular state's definition of the crime of burglary, the critical question is whether the acts of the defendant involved the statutory elements of an "unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." *Taylor,* 495 U.S. at 599, 110 S.Ct. at 2158.

■ The *Taylor* Court did, however, recognize an inherent limitation on the use of this categorical approach. If the state statute which forms the basis for the predicate offense gives the term burglary a broader definition than *Taylor*'s generic definition, then it would not be possible to use the categorical approach without knowing the specific facts alleged in the indictment or information. For example, a broader definition of burglary than its generic definition in *Taylor* might be found in a state statute that regards the entry of an automobile as well as a building as sufficient, *id.* at 602, 110 S.Ct. at 2160, or a state statute that eliminates the requirement that the entry be unlawful. *See Barney,* 955 F.2d at 638. A conviction obtained under a state statute of this type could not be subject to a categorical analysis for determining whether an enhanced sentence is appropriate because the sentencing court would not know whether the specific crime charged involved the generic elements of burglary set forth in *Taylor. See id.* at 599–602, 110 S.Ct. at 2158–2160.

The *Taylor* Court recognized this potential problem, stating, "[w]e must therefore address the question whether, in the case of a defendant who has been convicted under a non-generic burglary statute, the Government may seek enhancement on the ground that he *actually committed* a generic burglary." *Taylor,* 495 U.S. at 599–600, 110 S.Ct. at 2158–2159 (emphasis added). The Court noted that in the case of a state statute that was broader than the generic definition, the prosecution could offer fact-specific proof that the indictment or information did in fact actually alleged a generic burglary, in spite of the fact that the statutory definition of the crime was broader. If the prosecution is in fact able to prove that the crime charged was a generic burglary, then the use of that conviction for purposes of enhancement will

the narrower, obsolete common-law definitions because the modern definitions of these crimes had greatly expanded since the early days of the common law. *See, e.g., Bell v. United States,* 462 U.S. 356, 362, 103 S.Ct. 2398, 2402, 76 L.Ed.2d 638 (1983) (larceny); *Perrin v. United States,* 444 U.S. 37, 62, 100 S.Ct. 311, 325, 62 L.Ed.2d 199 (1979) (bribery); *United States v. Nardello,* 393 U.S. 286, 289–93, 89 S.Ct. 534, 536–38, 21 L.Ed.2d 487 (1969) (extortion).

The Court also viewed the generic definition as preferable to the common-law definition because it "prevented offenders from invoking the arcane technicalities of the common-law definition of burglary to evade the sentence-enhancement provision, and protected offenders from the unfairness of having enhancement depend upon the label employed by the State of conviction." *Taylor,* 495 U.S. at 589, 110 S.Ct. at 2153.

be permissible. *Id.* at 638–39, 110 S.Ct. at 2124–25; *Permenter,* 969 F.2d at 913.

We must now apply these principles to the circumstances surrounding Phelps' prior convictions and determine if the district court's conclusions were correct. Phelps contends that the trial court erred when it applied the enhancement provision in 18 U.S.C. § 924(e) because the United States did not successfully establish that Phelps had committed three prior violent felonies. The parties on appeal agree that the conviction for carrying a concealed weapon does not constitute a violent felony, and therefore, it cannot be used to support an enhanced sentence under § 924(e). As a result, the issue is whether three of Phelps' four other prior convictions can support an enhanced sentence. At sentencing, the government introduced certified copies of Phelps' prior convictions as evidence.

We conclude that both of his burglary convictions and his kidnapping conviction are violent felonies under § 924(e) that can support an enhanced sentence.[10]

### 1. *The 1975 Burglary Conviction*

■ As an initial matter, it is apparent that a conviction for "burglary" can be used in support of an enhanced sentence because it is specifically enumerated in the statute. *See* 18 U.S.C. § 924(e)(2)(B)(ii) (1988).

Therefore, the first step in our inquiry is to determine whether the Missouri burglary statute under which Phelps was convicted comports with the generic definition of burglary adopted in *Taylor. See Permenter,* 969 F.2d at 914. Phelps' 1975 burglary conviction was under Missouri Statute § 560.070, which contained a definition of burglary that was broader than the generic definition in *Taylor* because it extended the unlawful entry beyond buildings to cover "any booth or tent, or any boat or vessel, or railroad car." Interestingly, this is the exact same statute that the petitioner in *Taylor* was convicted of, and which was used to enhance his sentence in that case. *See Taylor,* 495 U.S. at 599, 110 S.Ct. at 2158 (citing this statute). There-

fore, it is necessary to resort to the actual charging document to determine if this conviction may be used to enhance Phelps' sentence.

In this case, the charging document alleged that appellant did "unlawfully, intentionally and feloniously break and enter the building of [an individual] ... with the intent to steal." Thus, although Missouri's statutory definition of burglary is broader than the generic definition, a fact recognized by the Supreme Court in *Taylor,* 495 U.S. at 599–600, 110 S.Ct. at 2158–2159, the underlying documents demonstrate that his conviction fell within the generic definition. The district court therefore properly counted this conviction towards the imposition of an enhanced sentence. *See, e.g., Permenter,* 969 F.2d at 912; *Barney,* 955 F.2d at 638.

### 2. *The 1981 Burglary Conviction*

Appellant's claim that his second burglary conviction should not be counted towards enhancement is equally unpersuasive. This conviction occurred in 1981 after Missouri's burglary statute had been modified. Nonetheless, appellant's brief apparently concedes that the 1981 conviction under the modified statute may be counted towards an enhanced sentence. His brief states: "[b]y 1981, the time of Appellant's second burglary conviction in 1981, the Missouri Burglary Statute, [§ 564.170] *substantially corresponded to the generic burglary definition of Taylor.*" Appellant's Brief, at 9 (emphasis added).

Moreover, even without this concession, it is clear that appellant's claim would still fail. In *United States v. Whitfield,* 907 F.2d 798 (8th Cir.1990), the Eighth Circuit, which has jurisdiction over appeals from the Districts of Missouri, expressly found that Missouri's modified burglary statute fell within the generic definition of burglary set forth in *Taylor. Id.* at 800. We agree with the reasoning and analysis of the Eighth Circuit, which found that the new statute contained the essential elements of a generic burglary under *Taylor.* As a result, we conclude that

---

**10.** Based on our conclusion that these three convictions are sufficient to support his enhanced sentence under § 924(e), we need not address

whether his conviction for escape from custody is a violent felony sufficient to sustain an enhanced sentence.

the district court did not err in finding that this conviction could be used to support an enhanced sentence.

### 3. *The Kidnapping Conviction*

■ Unlike the crime of burglary, § 924(e)(2)(B) does not specifically list kidnapping as a violent felony. Therefore, we must focus on the statutorily mandated inquiry into whether the crime of kidnapping is a crime that either has an element of use, attempted use or threatened use of physical force against the person of another, or whether that crime involves conduct that presents a serious potential risk of physical injury to another.[11]

Phelps argues that his conviction for kidnapping was not a violent crime, that kidnapping is not intrinsically violent and that therefore, the district court erred in relying on this conviction to enhance his sentence. The United States argues that although kidnapping under the Missouri statute does not require proof of physical force as an element of the offense under § 924(e)(2)(B)(i), the crime nonetheless entails a serious potential risk of physical injury to another based on the requirement that the kidnapping be *without that person's consent*. As a result, the United States argues that use of this conviction for enhancement is proper under § 924(e)(2)(B)(ii).

We have not previously addressed the issue of whether kidnapping constitutes a violent felony for purposes of § 924(e)(2)(B)(i) or (ii). In this regard, however, we find the Ninth Circuit's decision in *United States v. Sherbondy*, 865 F.2d 996 (9th Cir.1988) particularly enlightening.

In *Sherbondy*, the Ninth Circuit correctly anticipated the Supreme Court's adoption of a categorical approach to determining whether a specific crime was a violent felony. *See Taylor*, 495 U.S. at 600, 110 S.Ct. at 2159 (citing, *inter alia*, *Sherbondy* for the proposi-

tion that a categorical approach should be used in this context). The *Sherbondy* court reasoned that although the crime of kidnapping did not contain the use of force as an essential element of the crime, it nonetheless entailed a "serious potential risk of physical injury" to the victim, and that it was therefore a violent felony under § 924(e)(2)(B)(ii). *See Sherbondy*, 865 F.2d at 1009.

We adopt the reasoning outlined in *Sherbondy*, particularly in light of the fact that the Missouri statute, like most, defines kidnapping as an offense undertaken without the consent of the kidnapped person. It is worth emphasizing that § 924(e)(2)(B)(ii) only requires that there be a serious "potential" risk of injury; it does not require proof that any actual injury occurred, nor should it under a categorical approach. We agree with the position of the United States that it is plausible, and indeed even likely, that a non-consensual, unlawful kidnapping under the Missouri statute could potentially result in physical injury to an involved party. We therefore conclude that the crime of kidnapping under Missouri law is a violent felony sufficient to support an enhanced sentence under § 924(e)(1).

In sum, we reject appellant's statutory argument that the district court erred in imposing an enhanced sentence given that the United States offered sufficient evidence by which the sentencing court could conclude that appellant had three prior convictions for violent felonies under the ACCA. Having resolved Phelps' statutory arguments adversely to him, we must now address the merits of his constitutional challenge.

### II.

Phelps' second argument is that the district court erred when it determined that the classifications set forth in § 921(a)(20) as ap-

---

**11.** The indictment for kidnapping was brought pursuant to Missouri's kidnapping statute, which defined that crime as follows:

1. A person commits the crime of kidnapping if he unlawfully removes another *without his consent* from the place where he is found ... for the purpose of—

.... 

(4) Facilitating the commission of any felony

...

Mo.Rev.Stat. § 565.110(1)(4) (emphasis added).

plied in § 924(e) were not a violation of equal protection.[12]

18 U.S.C. § 921 is the definitional section of the ACCA. Subsection (a)(20) provides that:

[w]hat constitutes a conviction of [a crime punishable by imprisonment for a term exceeding one year] shall be determined in accordance with the law of the jurisdiction in which the proceedings were held. Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

Appellant's equal protection argument in this case is predicated on the fact that some states, including Missouri, the state where he was convicted, do not have a restoration statute, while other states have enacted such legislation. Equal protection is violated, he argues, by the disparity that results from the fact that § 921(a)(20) provides that state law determines what constitutes a conviction, combined with the fact that only some states have restoration statutes. He concludes that persons committing identical crimes in different states will be subject to unequal treatment under § 924(e).

In contrast, the United States urges us to follow the reasoning of the First Circuit in *United States v. Bregnard*, 951 F.2d 457 (1st Cir.1991), *cert. denied*, — U.S. —, 112 S.Ct. 2939, 119 L.Ed.2d 564 (1992), and the

Ninth Circuit in *United States v. Houston*, 547 F.2d 104 (9th Cir.1976) (*per curiam*). In those cases, the courts of appeals rejected the precise equal protection challenge that appellant presents here.

In upholding the constitutionality of this statute, those courts have, however, simply assumed that this statute is subject only to rational basis review and that heightened scrutiny is unjustified. *See Bregnard*, 951 F.2d at 461; *Houston*, 547 F.2d at 107. In the present case, appellee makes the same assumption. Appellant takes issue with this threshold matter, arguing that the statute infringes on his liberty under the Fifth Amendment, and that as a result, should be subject to strict scrutiny.

## A. The Appropriate Level of Scrutiny

■ It is well-established that the constitutional principle of equal protection prohibits governmental decisionmakers from enacting legislation that distinguishes between people who are, in all relevant respects, alike. *See F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415, 40 S.Ct. 560, 561, 64 L.Ed. 989 (1920). This principle does not, however, forbid any and all legislative classifications; indeed, we are bound to accept the general rule that "legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality." *McGowan v. Maryland*, 366 U.S. 420, 425–26, 81 S.Ct. 1101, 1104–05, 6 L.Ed.2d 393 (1961). As the Supreme Court has stated:

unless a classification warrants some form of heightened review because it *jeopard-*

---

**12.** Although the parties refer to the concept of "equal protection" in general terms, the words "equal protection" only appear in the Constitution in the Fourteenth Amendment. That amendment provides protection against only state action, and does not restrict the federal government. *See* U.S. Const. amend. XIV ("nor shall any *State* ... deny to any person within its jurisdiction the equal protection of the laws.").

Nonetheless, the Supreme Court has held that the Fifth Amendment due process clause incorporates the principles of equal protection and thus protects against discriminatory legislative classifications by the federal government. *See Bolling v. Sharpe*, 347 U.S. 497, 499, 74 S.Ct. 693, 694, 98 L.Ed. 884 (1954); *see also Lewis v. United States*, 445 U.S. 55, 65, 100 S.Ct. 915,

920, 63 L.Ed.2d 198 (1980) (noting that the "concept of equal protection [is] embodied in the Due Process Clause of the Fifth Amendment."); *United States v. Sperry Corp.*, 493 U.S. 52, 65 & n. 10, 110 S.Ct. 387, 397 & n. 10, 107 L.Ed.2d 290 (1989); *National Black Police Ass'n v. Velde*, 712 F.2d 569, 580 (D.C.Cir.1983) (stating that the due process clause of the Fifth Amendment "makes applicable to the federal government the equal protection limitations that the fourteenth amendment places on the actions of the states."), *cert. denied*, 466 U.S. 963, 104 S.Ct. 2180, 80 L.Ed.2d 562 (1984).

With this understanding in mind, we will simply refer to Phelps' second argument as his "equal protection" claim.

izes exercise of a *fundamental right or categorizes on the basis of an inherently suspect characteristic,* the Equal Protection Clause requires only that the classification rationally further a legitimate state interest.

*Nordlinger v. Hahn,* 505 U.S. ——, —— – ——, 112 S.Ct. 2326, 2331–32, 120 L.Ed.2d 1 (1992) (emphasis added); *see also Burlington Northern R. Co. v. Ford,* 504 U.S. ——, ——, 112 S.Ct. 2184, 2186, 119 L.Ed.2d 432 (1992). "The Equal Protection Clause deals not with substantive rights or freedoms but with invidiously discriminatory classifications." *Zablocki v. Redhail,* 434 U.S. 374, 391, 98 S.Ct. 673, 683, 54 L.Ed.2d 618 (Stewart, J., concurring).

Thus, the threshold issue presented by appellant is whether this statute impermissibly infringes on the exercise of a fundamental right or whether it categorizes individuals on the basis of an inherently suspect characteristic. He argues that this statute impermissibly infringes on his liberty under the Fifth Amendment, and thus, it should be subjected to strict scrutiny. Appellee, on the other hand, argues that this statute need only be rationally related to a legitimate governmental interest and is not subject to any heightened scrutiny.

It is clear that the ACCA does not contain any legislative classifications based on impermissible or invidious character traits, such as race [13] or religion. *See Ford,* 504 U.S. ——, 112 S.Ct. at 2186; *Dallas v. Stanglin,* 490 U.S. 19, 23, 109 S.Ct. 1591, 1593, 104 L.Ed.2d 18 (1989). Thus, appellant's claim that heightened review is warranted must be based on an assertion that this statute somehow interferes or burdens the exercise of a fundamental right—his liberty. He has cited no authority, nor have we found any, that supports this position.

While it cannot reasonably be disputed that an individual's liberty is a fundamental

right, we do not think that § 921(a)(20) can be said to burden impermissibly appellant's liberty in this case. The plain language of that statute simply states that the determination of whether a particular conviction may be used for purposes of, *inter alia,* enhancing a sentence, must be determined by reference to state law. In other words, the determination of whether an individual's civil rights have been restored to him, thereby precluding reliance on the underlying conviction for any purpose under the statute, is governed by the law of the state of conviction.

Appellant's argument that this statute implicates his liberty is misdirected. The connection between this statute and any possible infringement or burden on appellant's liberty is simply too far removed and too attenuated to necessitate that this statute be subjected to strict scrutiny. Appellant's argument, in essence, is that this statute mandates that the determination of a conviction be determined by reference to state law; that the State of Missouri does not have a civil rights restoration statute; that if it did, appellant might have had his civil rights restored to him; that if his civil rights had been restored to him, he might not have three convictions; and that as a result, the enhanced sentence provision operates to increase his sentence, thereby implicating his liberty. We think that this discussion illustrates why the connection between this statute and appellant's liberty is too far removed and too speculative to warrant any type of heightened scrutiny.

## B. *Is the Statute Rational?*

 Given this conclusion, it is clear that in order to uphold the constitutionality of this statute as applied to appellant, the statute need only pass the lowest level of equal protection scrutiny: it must simply be "rationally related to a legitimate government objective." *See Nordlinger,* 505 U.S. at —— – ——, 112 S.Ct. at 2331–32; *San Anto-*

---

**13.** The paradigmatic example of a statute containing a facially discriminatory legislative classification based on an impermissible character trait can be found in *Strauder v. West Virginia,* 100 U.S. 303, 25 L.Ed. 664 (1879). In that case, a black defendant had been convicted of murder by an all-white jury pursuant to a state statute providing that only "white male persons who are

twenty-one years of age and who are citizens of this State" were eligible to serve as jurors.

The Supreme Court found the statute violative of the equal protection clause based on the fact that the statute contained a facially discriminatory legislative classification that prohibited blacks from serving as jurors. *Id.* 100 U.S. at 307.

*nio Indep. School Dist. v. Rodriguez,* 411 U.S. 1, 44, 93 S.Ct. 1278, 1302, 36 L.Ed.2d 16 (1973). Moreover, because legislation subject to rational basis review is presumptively constitutional, *see Cleburne v. Cleburne Living Center, Inc.,* 473 U.S. 432, 439–440, 105 S.Ct. 3249, 3253–3254, 87 L.Ed.2d 313 (1985), the burden is on the appellant to establish that the statute is irrational or arbitrary and that it cannot conceivably further a legitimate governmental interest. *See Ford,* 504 U.S. at –––– – ––––, 112 S.Ct. at 2187–88; *United States Railroad Retirement Bd. v. Fritz,* 449 U.S. 166, 179, 101 S.Ct. 453, 461, 66 L.Ed.2d 368 (1980); *New Orleans v. Dukes,* 427 U.S. 297, 303–05, 96 S.Ct. 2513, 2516–18, 49 L.Ed.2d 511 (1976) (*per curiam* ). Appellant has not met this very difficult burden in this case.

■ In *Houston,* the Ninth Circuit rejected the precise equal protection challenge that appellant raises here.[14] The court initially stated that fact that "the application of [the statute] is ultimately predicated on laws which may vary from state to state provides no substance to appellant's [equal protection] claim." *Houston,* 547 F.2d at 107. The court went on to conclude that the statute was in fact a rational means of furthering a legitimate governmental interest, noting that:

> [i]t was entirely rational for Congress to conclude that its primary source of reference should be the maximum permissible punishment under the applicable law, and that this statutory scheme would provide a well-defined and uniform guideline to determine which persons should be subject to [the penalty of the statute].

*Houston,* 547 F.2d at 107.

In *Bregnard,* the First Circuit cited *Houston* with approval and followed its reasoning, stating that "[i]t is beyond dispute that as long as Congress does not use an invidious or suspect classification, it has broad power under the commerce clause to define the class of criminals to whom the enhancement applies." *Bregnard,* 951 F.2d at 461. Concluding that Congress did in fact have a rational basis for mandating that an armed career criminal be subjected to an enhanced sentence, the court then echoed the statement in

*Houston* that "[t]he mere fact that application of the § 924(e) enhancement is ultimately predicated on the definition of crimes that may vary from state to state is insufficient to conclude that § 924(e) violates the equal protection of the law." *Id.*

It is apparent from the history of this statute, detailed in *Taylor,* as well as the *Houston* and *Bregnard* opinions, that Congress enacted this portion of the statute as a rational legislative response to the problem presented by career offenders such as Phelps, who commit a large number of fairly serious crimes as their means of livelihood. *See Taylor,* 495 U.S. at 587, 110 S.Ct. at 2152. Congress could reasonably have concluded that such individuals present a greater danger to society and, therefore, should receive an enhanced term of imprisonment, as compared to a first time offender with no violent criminal history.

We thus join the First and Ninth Circuits in concluding that the enhanced sentencing portion of the ACCA does not violate the equal protection component of the Fifth Amendment.

The judgment of the district court is therefore **AFFIRMED.**

---

14. Although *Houston* involved a challenge to the predecessor of § 924, we do not believe that this is a significant distinction. Moreover, we find the reasoning used by that court persuasive.