**UNITED STATES of America,**
**Plaintiff,**

v.

**Ismail Issa BARRE, a/k/a Ismail Guled Ali, Defendant.**

**No. CR. 03–CR–306–B.**

United States District Court,
D. Colorado.

April 5, 2004.

David Michael Gaouette, United States Attorney's Office, Denver, CO, for Plaintiff.

Walter L. Gerash, Gerash Law Firm, PC, Edward A. Pluss, Federal Public Defenders Office, Mitchell Baker, Mitchell Baker & Associates, Earl Sherwood Wylder, Earl S. Wylder, Atty at Law, Denver, CO, for Defendant.

## MEMORANDUM OPINION AND ORDER

BABCOCK, Chief Judge.

Defendant Ismail Barre moves to declare 18 U.S.C. § 1960(b)(1)(A) unconstitutional based on equal protection and vagueness arguments. Defendant was indicted on one count: knowingly conducting, controlling, managing, supervising, directing, or owning all or part of an unlicensed money transmitting business, in violation of 18 U.S.C. §§ 2 and 1960(a) and (b)(1)(A). I agree that the right to equal protection is infringed. Therefore, I grant Defendant's motion.

### Discussion

#### A. Equal Protection

Defendant argues that 18 U.S.C. § 1960(b)(1)(A) violates his right to equal protection. Section 1960(b)(1) applies to unlicensed money transmitting businesses that "affect[ ] interstate or foreign commerce." Therefore, the federal law rests on Congress' commerce clause powers, which are subject to the due process requirements of the Fifth Amendment. *See Currin v. Wallace,* 306 U.S. 1, 59 S.Ct. 379, 83 L.Ed. 441 (1939). Equal protection is afforded by the Fifth Amendment due process clause under the same analysis as applied under the Fourteenth Amendment. *See Buckley v. Valeo,* 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976).

██ Equal protection requires that a law afford similarly situated people like treatment. *New York City Transit Authority v. Beazer,* 440 U.S. 568, 99 S.Ct. 1355, 59 L.Ed.2d 587 (1979). Generally, I apply a rational-basis test to evaluate a law under equal protection. The Supreme Court has explained that "if a law neither burdens a fundamental right nor targets a suspect class, we will uphold the legislative classification so long as it bears a rational relation to some legitimate end." *Romer v. Evans,* 517 U.S. 620, 631, 116 S.Ct. 1620, 134 L.Ed.2d 855 (1996). However, when the statute at issue implicates a fundamental right, I apply strict-scrutiny analysis. Under strict scrutiny, the government bears the burden of proving that the classification is necessary to accomplish a compelling governmental interest. *See Shapiro v. Thompson,* 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969).

18 U.S.C. § 1960 states:

(a) Whoever knowingly conducts, controls, manages, supervises, directs, or owns all or part of an unlicensed money transmitting business, shall be fined in accordance with this title or imprisoned not more than 5 years, or both.

(b) As used in this section—

(1) the term "unlicensed money transmitting business" means a money transmitting business which affects interstate or foreign commerce in any manner or degree and—

**(A) is operated without an appropriate money transmitting license in a State where such operation is punishable as a misdemeanor or a felony under State law,** whether or not the defendant knew that the operation was required to be licensed or that the operation was so punishable;

(B) fails to comply with the money transmitting business registration requirements under section 5330 of title 31, United States Code, or regulations prescribed under such section; or

(C) otherwise involves the transportation or transmission of funds that are known to the defendant to have been derived from a criminal offense or are intended to be used to promote or support unlawful activity;

(2) the term "money transmitting" includes transferring funds on behalf of the public by any and all means including but not limited to transfers within this country or to locations abroad by wire, check, draft, facsimile, or courier; and

(3) the term "State" means any State of the United States, the District of Columbia, the Northern Mariana Islands, and any commonwealth, territory, or possession of the United States.

(Emphasis added.)

To the extent that violation of 18 U.S.C. § 1960(b)(1)(A) is dependent on the nature and existence of state laws with regard to licensing, it is undisputed that state laws vary. Some states require licenses, some do not. Some states criminalize a failure to license. Some do not. Some punish a failure to license as a misdemeanor. Some punish it as a felony. The federal law makes it a felony to violate a state law making illegal money transmitting without a license. Defendant contends that an unlicensed money transmitter could face federal felony charges as well as state charges in one state, while in another state the same transmitter engaging in the same activity could not be prosecuted at all.

Defendant makes strict-scrutiny and rational-basis arguments regarding the failure of the law under equal protection. First, he contends that 18 U.S.C. § 1960(a) and (b)(1)(B) implicate his fundamental right to liberty, so strict scrutiny applies.

Under strict scrutiny analysis, the government bears the burden of proving that the classification is necessary to achieve a compelling governmental interest. *See Foucha v. Louisiana,* 504 U.S. 71, 115, 112 S.Ct. 1780, 118 L.Ed.2d 437 (1992) ("Certain substantive rights we have recognized as fundamental; legislation trenching upon these is subjected to strict scrutiny, and generally will be invalidated unless the [government] demonstrates a compelling interest. . . .").

The statute does not specifically make any conduct illegal. Rather, it subjects an individual to federal felony prosecution for committing a state felony or misdemeanor. Defendant submits that his liberty interest is implicated because a guilty verdict under § 1960(a) and (b)(1)(A) would subject him to federal felony penalties. I agree. "Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action." *Foucha,* 504 U.S. at 80, 112 S.Ct. 1780.

As a threshold matter, I observe that the statute does not make a facial classification. However, its inevitable effect is the division of the group of similarly situated, unlicensed money transmitters into two classes. One class faces misdemeanor or felony sanctions by the state-and therefore, federal felony conviction under § 1960(a) and (b)(1)(A). The other class risks neither state criminal sanctions, nor consequently, application of § 1960(a) and (b)(1)(A). Defendant contends the government cannot establish that this disparate classification under § 1960 is necessary to achieve a compelling government interest.

In 1994, the Tenth Circuit decided a case analogous to the one at issue here. There, a federal sentence-enhancement statute did not violate equal protection rights of a defendant. *United States v. Phelps,* 17 F.3d 1334 (10th Cir.1994) (focusing on 18 U.S.C. 924, sentence enhance-ment for possession of weapon by a person convicted of three previous violent felonies in any court). The statute provided that crimes which had been expunged or set aside, or for which civil rights of a defendant had been restored, would not count toward the three crimes triggering the sentence enhancement. However, some states had restoration statutes while others did not. Phelps therefore contended that the statute infringed his fundamental liberty interest in freedom from bodily restraint. *Id.*

The Tenth Circuit disagreed, stating:

It cannot reasonably be disputed that an individual's liberty is not a fundamental right. . . . [However,] Appellant's argument that this statute implicates his liberty is misdirected. The connection between this statute and any possible infringement or burden on appellant's liberty is simply too far removed and too attenuated to necessitate that this statute be subjected to strict scrutiny. Appellant's argument, in essence, is that this statute mandates that the determination of a conviction be determined by reference to state law; that the State of Missouri does not have a civil rights restoration statute; that if it did, appellant might have had his civil rights restored to him; that if his civil rights had been restored to him, he might not have three convictions; and that as a result, the enhanced sentence provision operates to increase his sentence, thereby implicating his liberty. We think that this discussion illustrates why the connection between this statute and appellant's liberty is too far removed and too speculative to warrant any type of heightened scrutiny.

*Id.* at 1344.

*Phelps* is distinguishable. Here, the relationship between § 1960(a) and (b)(1)(A) and Mr. Barre's liberty interest is neither

speculative, nor attenuated, nor far removed. Rather, simply and wholly because Colorado law treats operation of an unlicensed money transmitting business as a misdemeanor, Mr. Barre-who admittedly operated his business without a license-is without question subject to incarceration and fine under the federal law. As Defendant points out, he could engage in *exactly the same conduct* in a state that does not punish unlicensed money-transmitting operators and escape application of the federal law.

The government argues that it has a compelling classification interest in 18 U.S.C. § 1960(b)(1)(A). It was enacted "in order to combat the growing use of money transmitting businesses to transfer large amounts of the monetary proceeds of unlawful enterprises." *United States v. Velastegui*, 199 F.3d 590, 593 (2nd Cir.1999). The government contends there is a great need for enforcement in this area because money launderers and drug dealers use money transmitters to facilitate illegal activities. It submits that the statute was "created to help increase the federal government's role when working with states to deter money transmitting business," and "was not designed to preempt state law, but to 'expand the federal role in a way that enhances and supplants state regulation.'" Response at 3, citing S.Rep. No. 101–460.

The government misconstrues the strict-scrutiny analysis. The question is not whether the government has a compelling interest in generally enacting the law. The inquiry under equal protection is whether there is a compelling interest for the *classification* created by the law. Here, similarly situated money transmitting operators are arbitrarily divided into two groups, those covered by state laws that punish non-licensing, and those who happen to be in states that do not. The difference is wholly geographic and arbitrary. There is nothing at all to differentiate one group from the other except an operator's presence in one state rather than another state. Both hypothetical operators could be laundering money or funneling money to terrorist organizations. Both could be fueling illegal drug-dealing operations. Both could be engaging in purely legal activities. And both are *unlicensed.*

■ Yet the government, through § 1960(b)(1)(A) and in a purely random manner, punishes one over the other based entirely on the presence or absence of state penalties in the state of operation. I conclude the government is arbitrarily restricting Mr. Barre's fundamental liberty interest in being free from bodily restraint by imposing § 1960(b)(1)(A) on him based entirely on the synchronicity of his running his operation in a state that may charge non-licensed operators with misdemeanors.

Even assuming, *arguendo*, that the strict-scrutiny test does not apply, I conclude that the classification created by 18 U.S.C § 1960(b)(1)(A) fails to bear a rational relationship to any legitimate government objective. "A classification must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike." *U.S. R.R. Retirement Bd. v. Fritz*, 449 U.S. 166, 184, 101 S.Ct. 453, 66 L.Ed.2d 368 (1980). *See also, Vacco v. Quill*, 521 U.S. 793, 799, 117 S.Ct. 2293, 138 L.Ed.2d 834 (1997). There is no rational statutory basis to distinguish between the class of money transferors operating in states that either do not require a license or do not criminalize the failure to have one, and other states that criminalize the failure to have a license.

The government fails to cite any legislative history or federal court authority that elucidate a legitimate foundation for such a classification. Having canvassed the legislative history of § 1960, which was added to RICO legislation in 1992, revised in 1994, and amended under the USA PATRIOT Act in 2001, *see* Pub.L. 107–56, Title III, § 373(a), Oct. 26, 2001, I fail to find any justification for the classification. Even assuming the ultimate goal of the statute-punishing unlicensed money transmitting operations because they might pose a risk of criminal activity-is legitimate-and I think it is-there is simply no basis for applying the law to one *unlicensed* operation but not another, similarly situated, *unlicensed* operation. There is no ground of difference having a fair and substantial relation to the object of the legislation to justify the classification.

The fact that one operation is punished by a state and another is not has nothing to do with the potential for an unlicensed operation to engage in illegal activities. One might contend-although the government did not-that conviction of a felony under § 1960(a) and (b)(1)(A) shuts down the unlicensed business, thereby decreasing crime. However, despite a conviction under § 1960(a) and (b)(1)(A), the business could remain open and be run by another person after a license was obtained, the operation moved to a friendly state, or conviction could lead only to imposition of a fine, allowing for continued operation of the business. Most importantly, in a state where a license is not required or the state does not enforce its license requirement, money transmitting operators may engage in criminal activity completely outside the scope of federal law. Congress could have enacted a statute under which a federal license would be required for all money transmitters, the absence of which could result in federal felony charges regardless of state law. But it did not. I hold that

18 U.S.C. § 1960(b)(1)(A) is unconstitutional.

### B. Vagueness

Defendant contends that § 1960 is unconstitutionally vague. Having determined the equal protection question in Defendant's favor I need not address the vagueness issue.

ACCORDINGLY, IT IS ORDERED THAT:

DEFENDANT BARRE's motion to declare 18 U.S.C. § 1960(b)(1)(A) unconstitutional is GRANTED.