FILED
United States Court of Appeals
Tenth Circuit

February 19, 2010

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

UNITED STATES OF AMERICA,

  Plaintiff-Appellee,

v.

DAVID EUSTACIO PALATO,
a/k/a Guero, a/k/a Guerito,

  Defendant-Appellant.

No. 09-8057
(D.C. No. 2:08-CR-00105-ABJ-09)
(D. Wyo.)

ORDER AND JUDGMENT[*]

Before **LUCERO**, **HOLLOWAY**, and **MURPHY**, Circuit Judges.

   This case addresses two issues: first, whether the District Court properly

relied upon sufficient evidence when calculating the quantity of drugs for sentencing

purposes; and second, whether the court properly denied Defendant-Appellant David

Palato a downward adjustment for his claimed "minor" or "minimal" participation in the

charged offenses.

   Since the District Court properly relied upon Mr. Palato's admissions in

combination with the proffered statements of three witnesses to establish both the

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. This court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

quantity of drugs and that Mr. Palato was not a "minor" nor a "minimal" participant in the charged offenses, his sentence is AFFIRMED.

## BACKGROUND

The Prosecutor's Statement set forth the following facts:

Mr. Palato was one of several people purchasing methamphetamine from Jose Suarez, Sr. for redistribution in Colorado and Wyoming. R., Vol. II, at 90. Mr. Palato was identified by a few individuals as a distributor. *Id.*

Carol Duran's proffer related that she met Mr. Palato at dinner with Mr. Suarez, Sr. in the fall of 2007. During that dinner, Mr. Suarez, Sr. took Mr. Palato's car keys, left the restaurant, and came back later with four ounces of methamphetamine. *Id.* Ms. Duran described Mr. Palato as a "big dealer" for Mr. Suarez, Sr. Supp. R., Vol. I, at 13.

Jose Suarez, Jr. proffered that he had delivered methamphetamine to Mr. Palato on three separate occasions on behalf of his father, the amount totaling eight ounces. R., Vol. II, at 90.

Leticia Suarez (Mr. Suarez, Sr.'s daughter and Suarez, Jr.'s sister) described how the relationship between her father and Mr. Palato began. She proffered that Mr. Suarez, Sr. provided Mr. Palato with methamphetamine to sell so Mr. Palato could repay Mr. Suarez, Sr. the money ($45,000) he had paid for Mr. Palato's brother's criminal defense and other monies his brother owed to Mr. Suarez, Sr. Ms. Suarez recounted that her father had supplied Mr. Palato with one or two pounds of methamphetamine every month between June of 2007 and April of 2008. *Id.* at 91.

Mr. Palato was intercepted on a court authorized phone tap. There was a conversation between Mr. Palato and Ms. Suarez regarding three ounces of methamphetamine that had been delivered to Mr. Palato but later returned to the Suarez home because the drugs were of poor quality. When the Suarez home was searched, the three ounces of methamphetamine were found. *Id.*

At his Change of Plea Hearing, Mr. Palato pleaded guilty to both (1) Conspiracy to Possess with Intent to Distribute, and to Distribute Methamphetamine, 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A); and (2) Using a Communication Facility to Facilitate a Drug Felony, 21 U.S.C. § 843(b). The District Court explained the charges and the consequences of pleading guilty to Mr. Palato and following those advisements he pleaded guilty to both counts.

Before accepting the pleas the District Court made several inquiries of Mr. Palato. Mr. Palato admitted obtaining methamphetamine from Mr. Suarez, Sr. on a front basis, redistributing it for others for resale, and then paying Mr. Suarez, Sr. for the drugs. R., Vol. III, at 23. He admitted doing so "for about, um, four to five years" from "roughly 2004 through 2008." *Id.* at 23-4. Mr. Palato explained his drug activity involved people in both Colorado and Wyoming, specifically Laramie and Torrington. *Id.* at 24. He agreed with the court that the "drug quantity was above or right at 500, 500 grams or more." *Id.* He admitted he was voluntarily involved in the drug activities and had spoken with Ms. Suarez on the telephone regarding facilitating, obtaining, or arranging to obtain drugs. *Id.* at 25.

Thereafter, the District Court accepted Mr. Palato's pleas and ordered that a Presentence Report (PSR) be created. The PSR added the most conservative estimates reported by Ms. Suarez (of the one to two pounds monthly) and the half-pound reported by Mr. Suarez, Jr. to be 20.5 pounds, or 9.3 kilograms.[1] Supp. R., Vol. II, at ¶¶ 35-36. The probation officer creating the PSR reduced the offense level by three for Mr. Palato's acceptance of responsibility and the final offense level was calculated to be 33. *Id.* at ¶¶ 49-50. Thus, the suggested range was 188-235 months. Although the PSR reported Mr. Palato's criminal history category to be IV, the court reduced this to III, thereby reducing the suggested range to 168-210 months. R., Vol. III, at 55-56.

Mr. Palato objected to the PSR and argued the drug quantity was miscalculated: there was only evidence of eight ounces of drugs (which is .226 kilograms) not the 5-15 kilograms suggested in the PSR. At the Sentencing Hearing the government introduced the proffered statements of Ms. Duran, Mr. Suarez, Jr., and Ms. Leticia Suarez. Mr. Palato argued the statements were not corroborated and as such did not have sufficient indicia of reliability for the court to use when determining the quantity of drugs. The District Court disagreed and found by a preponderance of evidence the quantity of drugs involved was between 5 and 15 kilograms.

---

[1]Close examination revealed the PSR contained an error. The PSR reported Ms. Suarez described the delivery of one to two pounds of methamphetamine on a *weekly* basis for a period of *twenty* months. Supp. R., Vol. II, at ¶ 35. However, Ms. Suarez's proffered statement explained the delivery of one to two pounds of methamphetamine occurred on a *monthly* basis and for a period of *ten* months. Nonetheless, this error is of no effect because even the minimum calculation of one to two pounds for ten months plus the half-pound proffered by Mr. Suarez, Jr. would add up to at least 11.5 pounds, which is more than 5 kilograms.

Mr. Palato also objected to the probation officer's exclusion of a mitigating role adjustment under U.S.S.G. § 3B1.2. He argued that when compared to the other members of the conspiracy his involvement was at a "much less level" and thus deserved a reduction in his Base Offense Level. R., Vol. III, at 60. Based on Mr. Palato's repeated distribution of Mr. Suarez, Sr.'s methamphetamine in two different states for a period of four or five years, the court found his involvement was not minor or minimal and did not deserve the reduction. *Id.* at 55.

However, the court found Mr. Palato deserved a different decrease of two levels and dropped his sentence to 135 months. Given the time already served, the eventual sentence was for only 128 months. Mr. Palato was also given five years of supervised release upon his release from confinement and was ordered to pay a $100 assessment fee for each charge, totaling $200. Mr. Palato appealed.

## DISCUSSION

The District Court had jurisdiction over the case because Mr. Palato pleaded guilty to committing federal offenses. 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A), and 843(b). This court has appellate jurisdiction over the final judgment pursuant to 18 U.S.C. § 1291 and jurisdiction to review the sentence according to 18 U.S.C. § 3742.

## I. Calculation of the Drug Amount

This court reviews "a district court's interpretation of the Guidelines de novo, and its factual findings for clear error, giving due deference to the district court's application of the guidelines to the facts." *United States v. Williams*, 431 F.3d 1234, 1237 (10th Cir.

2005) (quotation omitted). Calculating the quantity of drugs to establish a base offense level is a factual finding "determined by a preponderance of the evidence" and is reviewed for clear error. *United States v. Johnston*, 146 F.3d 785, 795 (10th Cir. 1998) (citing *United States v. Arias-Santos*, 39 F.3d 1070, 1078 (10th Cir. 1994)). A District Court's decision that a piece of evidence has sufficient indicia of reliability is also reviewed for clear error. *United States v. Hooks*, 65 F.3d 850, 854 (10th Cir. 1995).

Mr. Palato asserts the District Court erred by relying on the unsworn and unreliable hearsay statements of Ms. Duran, Mr. Suarez, Jr., and Ms. Suarez. He argues the statements did not corroborate each other as to the amount of drugs and there was no evidence supporting a quantity of 5 to 15 kilograms. Ms. Duran's statement only mentioned four ounces of methamphetamine, Mr. Suarez, Jr.'s statement discussed a different eight ounces and Ms. Suarez's statement gave only a vague indication of one to two pounds monthly but gave no details as to how those pounds were allegedly delivered, how she knew this information, or for how many months the methamphetamine was allegedly delivered.

It goes without debate that Mr. Palato has the right to have his sentence determined solely by reliable evidence. *See United States v. Verdin-Garcia*, 516 F.3d 884, 896 (10th Cir. 2008) ("'When the actual drugs underlying a drug quantity determination are not seized, the trial court may rely upon an estimate to establish the defendant's guideline offense level so long as the information relied upon has some basis of support in the facts of the particular case and bears sufficient indicia of reliability.'" (citation omitted)).

- 6 -

However, that right does not preclude the District Court from relying on unsworn hearsay statements so long as they carry sufficient indicia of reliability. *United States v. Lopez*, 100 F.3d 113, 120 (10th Cir. 1996) ("Hearsay statements need only contain minimal indicia of reliability to be used at sentencing." (citing *United States v. Browning*, 61 F.3d 752, 755 (10th Cir. 1995))).

Here, the three statements were corroborated not only by each other, but also by Mr. Palato's own admissions before the court when he changed his plea. All three statements identified Mr. Palato as a distributor of methamphetamine for Mr. Suarez, Sr., a fact Mr. Palato admitted. Ms. Duran identified Mr. Palato as a "big dealer," which is consistent with Mr. Palato distributing methamphetamine for four or five years in two different states. Mr. Suarez, Jr.'s statement told of how he delivered methamphetamine to Mr. Palato on behalf of his father. Mr. Palato admitted redistributing methamphetamine for Mr. Suarez, Sr. Ms. Suarez revealed how the relationship between Mr. Palato and her father started – with repaying Mr. Palato's brother's debt of $45,000 by distributing methamphetamine. Mr. Palato confirmed his relationship with Mr. Suarez, Sr. grew from Mr. Suarez, Sr.'s relationship with Mr. Palato's brother.

The three proffered statements were corroborated and had sufficient indicia of reliability in order to be relied upon when calculating the amount of methamphetamine for Mr. Palato's base offense level. *See United States v. Sells*, 477 F.3d 1226, 1241 (10th Cir. 2007) (holding the witnesses' statements were sufficiently reliable in part because they were corroborated). Given that the standard of review is for clear error, Mr. Palato

- 7 -

needed to prove the District Court was plainly wrong in finding the proffers were sufficiently reliable. *Johnston*, 146 F.3d at 795. Here, Mr. Palato has failed to meet that burden. The proffers were corroborated by each other as well as by Mr. Palato's admissions. The District Court correctly relied upon the proffers and calculated the amount of methamphetamine to be between 5 and 15 kilograms. Therefore, this court AFFIRMS Mr. Palato's Base Offense Level to be 33.

## II. The "Minimal" or "Minor Participant" Decrease in Offense Level

This court reviews the District Court's determinations as to a defendant's role in a crime under U.S.S.G. § 3B1.2 for clear error. *United States v. Durham*, 139 F.3d 1325, 1336 (10th Cir. 1998) (citing *United States v. Santistevan*, 39 F.3d 250, 253 (10th Cir. 1994)).

U.S.S.G. § 3B1.2 provides for a four level decrease if the defendant was a "minimal participant" and a two level decrease if he was a "minor participant." A "minimal participant" is one who is "plainly among the least culpable of those involved in the conduct of the group." U.S.S.G. § 3B1.2 cmt. n. 4. The defendant has the burden to show he was only minimally involved and did not play a "'significant role' in facilitating a drug trafficking scheme." *United States v. Virgen-Chavarin*, 350 F.3d 1131, 1122, (10th Cir. 2003) (quoting *United States v. Ayers*, 84 F.3d 382, 384 (10th Cir. 1996)).

Mr. Palato asserts he was the "least culpable" of those involved in the conspiracy. He compares himself with Ms. Suarez who shared a home with Mr. Suarez, Sr., who was involved in delivering pound quantities of drugs, had access to firearms and exposure to

large amounts of cash.  R., Vol. III, at 59.  However, the decision of whether to grant the adjustment is "heavily dependent upon the facts of the particular case" and "in weighing the totality of the circumstances, [the District Court] is not required to find, based solely on the defendant's bare assertion, that such role adjustment is warranted."  U.S.S.G. § 3B1.2 cmt. n. 3(C).  The District Court's denial of a reduction will not be reversed under the clear error standard unless the denial was "without factual support in the record, or if after reviewing the evidence we are left with the definite and firm conviction that a mistake has been made."  *Santistevan*, 39 F.3d at 253-54.

Mr. Palato bore the burden to prove by a preponderance of the evidence that he was a minimal participant and thus entitled to the reduction.  *Id.*  He failed to meet that burden.  "A defendant's own testimony that others were more heavily involved in a criminal scheme may not suffice to prove his minor or minimal participation, even if uncontradicted by other evidence."  *United States v. Salazar-Samaniega*, 361 F.3d 1271, 1278 (10th Cir. 2004).  Mr. Palato offered no evidence other than his own testimony to prove he was the least culpable member of the conspiracy.  He simply compared himself to his co-defendants and argued he was less culpable.  However, the mere fact that others were very involved in the conspiracy does not necessarily preclude Mr. Palato from being just as involved or involved in a different manner.[2]

---

[2]At oral argument, Mr. Palato's counsel asserted there must always be a minor participant in every conspiracy – that it would be impossible to have a conspiracy of all major participants. We find this contention is without merit.  Criminal conspiracies come in all forms and may consist solely of major participants with no member being the least culpable.

In fact, Mr. Palato's testimony at his Change of Plea Hearing reflected that he was deeply involved in the conspiracy. He admitted distributing methamphetamine for four to five years in two different states. He agreed the quantity was "above or at 500 grams" and he voluntarily distributed methamphetamine for Mr. Suarez, Sr. R., Vol. III, at 23-25. Mr. Palato's conduct was of an independent nature since he had his own clientele in two states. Such independent conduct does not support the contention that Mr. Palato played a "minor role" in the drug trafficking conduct. *See Virgen-Chavarin*, 350 F.3d at 1131 (finding a defendant who "obtained drugs, negotiated the price of drugs, sold drugs, and returned money to drug suppliers" was sufficiently involved in the drug conspiracy to preclude being a minimal participant).

U.S.S.G. § 3B1.2 was intended to be applied to a lower-level drug trafficker who was simply doing as he was told. U.S.S.G. § 3b1.2 cmt. n. 3(A) (giving the example of "a defendant who is convicted for a drug trafficking offense whose role in that offense was limited to transporting or storing drugs" as a defendant who appropriately deserved the reduction). It was not intended to be applied to a "big dealer" of drugs with clientele in two states such as Mr. Palato. His independent actions of redistributing methamphetamine reflect more than mere minimal participation. *See Virgen-Chavarin*, 350 F.3d at 1131.

As such, the District Court did not err in denying Mr. Palato a decrease in Base Offense Level for minimal or minor involvement and his sentence is AFFIRMED.

**CONCLUSION**

Mr. Palato's own admissions, when combined with the reliable hearsay statements of three witnesses, were sufficient to establish the quantity of methamphetamine that was trafficked to be between 5 and 15 kilograms. His extensive involvement in the sale of methamphetamine for four or five years in two different states is sufficient to show he was not a minor or minimal participant and thus the District Court was correct to deny Mr. Palato's request to apply U.S.S.G. § 3B1.2. Accordingly, Mr. Palato's sentence is AFFIRMED.

Entered for the Court

William J. Holloway, Jr.
Circuit Judge