FILED
United States Court of Appeals
Tenth Circuit

**August 23, 2011**

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff - Appellee, | No. 09-3317 |
| v. | (D. Kansas) |
| JEREMY GILMORE, also known as Hummer, | (D.C. No. 2:07-CR-20164-JWL-5) |
| Defendant - Appellant. | |

**ORDER AND JUDGMENT**[*]

Before **MURPHY**, **EBEL**, and **HARTZ**, Circuit Judges.

## I. Introduction

Jeremy Gilmore appeals his conviction for one count of conspiracy to distribute and possess with intent to distribute more than fifty grams of methamphetamine in violation of 21 U.S.C. § 841(a)(1). He argues the trial court erred in refusing his request for an instruction on the lesser included offense of conspiracy to possess methamphetamine and in giving an instruction on aiding

[*]This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

and abetting. He also challenges the sufficiency of the evidence to support his conviction. Exercising jurisdiction under 28 U.S.C. § 1291, this court **AFFIRMS**.

## II. Background

On April 3, 2007, acting on a confidential tip that occupants of the vehicle sold methamphetamine, officers stopped Gilmore's vehicle after observing traffic violations. During the stop, officers found drug paraphernalia and all occupants were arrested. Gilmore was indicted with five co-conspirators, Leona Garcia; Kevin Funk; Wayne Fitts, Jr.; Copper Lesco; and Steve Saindon, for conspiracy to distribute and possess with intent to distribute more than fifty grams of methamphetamine. Gilmore was convicted by a jury after a four-day trial.

At trial, one Drug Enforcement Administration ("DEA") agent testified about the DEA's investigation of a methamphetamine distribution conspiracy in the Kansas City, Kansas, and St. Joseph, Missouri, areas. The investigation uncovered two high-level participants in the conspiracy, Miguel Cota-Gastelum, who received methamphetamine shipped from Mexico into the U.S., and Garcia, who distributed the methamphetamine for Cota-Gastelum from her residence. Garcia distributed to Fitts, Funk, and other mid-level distributors, who would then sell smaller quantities to users. Gilmore, who had one of the lowest level roles in the conspiracy, facilitated drug deals by allowing Fitts and Funk to use his vehicle to go to Garcia's residence in Kansas City to purchase methamphetamine

in bulk and bring the drugs back to the St. Joseph area for distribution. On several occasions, he accompanied Fitts to Garcia's to purchase methamphetamine.

Fitts testified he dealt with Garcia over a period of about five months, purchasing two- to eight-ounce quantities of methamphetamine at a time for resale. Around this time, Fitts met Gilmore through a mutual acquaintance. In a later encounter, Fitts and Funk were on their way to buy methamphetamine at Garcia's house when Fitts's car broke down. Fitts asked Gilmore to give them a ride to Garcia's to purchase methamphetamine, and Gilmore did so. Gilmore then purchased a quarter-ounce of methamphetamine from Fitts out of the four ounces Fitts and Funk purchased from Garcia. Gilmore entered Garcia's house that day and, as was a standard requirement for new visitors, Garcia required him to inject methamphetamine in front of her to prove he was not an informant. A few days later, Gilmore picked up Fitts and the two went riding around, stopping at a few houses where Fitts would sell methamphetamine. One person to whom Fitts sold drugs on this occasion was an individual referred to him by Gilmore. In exchange for the ride, Fitts gave Gilmore drugs.

On another occasion, Gilmore drove Fitts and Funk to Garcia's house, where Fitts and Funk purchased nine ounces of methamphetamine in Gilmore's presence. Funk and Gilmore tested the drugs to ensure they were of good quality. On the way back, Gilmore drove Fitts around to deliver drugs to various of Fitts's

customers. Fitts again gave Gilmore some drugs on this occasion, and sold him an additional quantity. On at least two other occasions, Gilmore helped Fitts collect money owed to him by his customers: on the first occasion, Gilmore collected money directly from one of Fitts's customers on Fitts's behalf; and on the other, Gilmore drove Fitts around to pick up money owed to him. All together, Fitts testified Gilmore accompanied him to Garcia's residence to buy drugs on at least four, and perhaps as many as six, occasions.

Funk testified he and Fitts grew up together and worked together selling methamphetamine, including methamphetamine obtained from Garcia. Funk stated Gilmore's involvement was premised on his ownership of a legitimately licenced and insured vehicle, the absence of which had been a problem for Funk and Fitts in the past. Funk testified as to two separate instances when Gilmore accompanied him and Fitts to Garcia's house. He further testified Gilmore witnessed the transactions at Garcia's house and on one visit used methamphetamine at the house. Funk also explained he used Gilmore's vehicle on many occasions to deliver drugs, giving Gilmore drugs in exchange. Gilmore accompanied Funk on the deliveries, and was aware of the purpose of the trips.

Garcia testified, generally corroborating Fitts's and Funk's characterization of Gilmore's presence at, and role in, the transactions. She further described Gilmore as one of Fitts's "flunkies" because he would "do anything [Fitts] said."

Saindon, Garcia's ex-boyfriend, also testified and generally corroborated Garcia's and Fitts's testimony.

Several of Fitts's and Funk's customers testified Gilmore was present when they purchased methamphetamine, and that Gilmore's vehicle was used for transportation during these exchanges. In addition, Gilmore's ex-girlfriend testified Gilmore provided her with methamphetamine which they would use together. She further testified Gilmore obtained his methamphetamine from Fitts and that she saw Fitts on a nearly daily basis, getting high on each visit. She was present on one occasion when Gilmore drove Fitts around delivering drugs, making between ten and fifteen stops. She testified she expressed concern to Gilmore about being in the presence of such a large quantity of drugs and that Gilmore told her it was okay and he had no problem with it.

In a statement to the police and at trial, Gilmore admitted transporting Fitts and Funk to Garcia's house, having knowledge of the transactions and purpose of the trips, getting methamphetamine from Fitts, and using the methamphetamine. Gilmore also testified he shared the methamphetamine from Fitts with several of his friends and with his ex-girlfriend. He admitted he attempted to collect money owed to Fitts on one occasion, but claimed he did so only because Fitts sold Gilmore bad methamphetamine and Gilmore was trying to collect what he felt Fitts owed Gilmore as compensation.

At the close of the government's case, Gilmore moved for a judgment of acquittal, which was denied. Again, after the jury's guilty verdict, Gilmore moved for a new trial or for judgment of acquittal, claiming the evidence was insufficient to support his conviction and challenging various aspects of the jury instructions. The district court denied those motions and this appeal followed.

## III. Discussion

### A. Lesser Included Offense Instruction

Gilmore requested a jury instruction on conspiracy to possess methamphetamine as a lesser included offense of the charged offense, conspiracy to possess methamphetamine with intent to distribute. The district court denied his request, reasoning that the requirements for giving a lesser included offense instruction were not met. This court reviews whether a lesser offense is included in the offense charged de novo and the district court's determination whether the evidence justifies a lesser included instruction for abuse of discretion. *United States v. Mullins*, 613 F.3d 1273, 1284 (10th Cir. 2010).

A defendant is entitled to a lesser included offense instruction only if four requirements are met: "(1) there was a proper request; (2) the lesser included offense includes some but not all of the elements of the offense charged; (3) the elements differentiating the two offenses are in dispute; and (4) a jury could rationally convict the defendant of the lesser offense and acquit him of the greater offense." *Id.* (quotation omitted). Here, the district court concluded, and

the government concedes, the first two requirements were met. The district court determined, however, that the third and fourth requirements were not met. As to the third prong, the court explained:

> Mr. Gilmore's request for the lesser-included offense instruction fails on the third prong because it is not the elements differentiating the two offenses that are in dispute; rather, the matter in dispute is whether Mr. Gilmore was a member of the conspiracy or just a consumer. The government presented overwhelming evidence that at the very least Mr. Fitts, Mr. Funk, and Ms. Garcia were members in a conspiracy to distribute and to possess with intent to distribute methamphetamine. It is clear that Mr. Gilmore's theory of the case was that he was in a simple buyer-seller relationship with at the very least Mr. Fitts and perhaps Mr. Funk. Therefore, the critical question is whether Mr. Gilmore was also a member of this conspiracy to distribute and to possess with intent to distribute.

The district court's reasoning is correct. Had the dispute at trial centered on whether the conspirators' goal was to distribute or merely to possess methamphetamine, a lesser included offense instruction would have been proper. Gilmore, however, did not dispute the nature of the conspiracy at least between Fitts, Funk, and Garcia. He admitted on the stand that he knew the three were distributing methamphetamine. He simply disputed his role in that conspiracy, claiming he was a user, not a co-conspirator. Accordingly, Gilmore's request for an instruction on conspiracy to possess methamphetamine is, in essence, a request for an instruction concerning a different, uncharged conspiracy, not a lesser included offense of the charged conspiracy. Because the dispute was not about the objective of the charged conspiracy, but rather about Gilmore's

-7-

involvement in the conspiracy, the district court correctly concluded the lesser included offense instruction was not required.

The district court also correctly decided the fourth prong of the test was not met because the jury could not rationally have convicted him of conspiracy to possess methamphetamine, but not conspiracy to possess with intent to distribute methamphetamine. There was no evidence presented at trial from which a jury could have found Gilmore engaged in or was associated with a conspiracy merely to possess methamphetamine. All evidence showed distribution was central to the charged conspiracy, including Gilmore's own testimony.

Gilmore makes no attempt to demonstrate the instruction was justified under the four-prong test. Rather, he argues the district court impermissibly engaged in fact finding reserved for the jury by referencing Gilmore's admission at trial to sharing methamphetamine with friends and acquaintances and concluding Gilmore was precluded from arguing his participation was limited to possession as a result.[1] This argument is without merit. The district court was required to determine whether the lesser included offense instruction was justified by the evidence presented at trial, and this court reverses the district court's evaluation of the evidence only when it constitutes an abuse of discretion. *See id.* at 1284. No such abuse of discretion occurred here. As the

---

[1] The district court denied Gilmore's separate request for an instruction that distribution does not include sharing drugs among drug users, and Gilmore has not appealed that denial.

district court concluded, there was no evidence that would support a jury finding that Gilmore conspired only to possess methamphetamine, but not that he conspired to possess it with intent to distribute. Contributing to the calculus was Gilmore's own testimony, referenced by the district court, that he obtained methamphetamine from Fitts, and "shared" that methamphetamine with friends, which bears on the distribution aspect of the conspiracy. The district court did not err in denying Gilmore's request for a lesser included offense instruction.

## B. Aiding and Abetting Instruction

Gilmore also appeals the district court's decision to give an aiding and abetting instruction to the jury, to which Gilmore objected below, arguing it unconstitutionally lowered the government's burden of proof. The district court, however, gave the jury a special verdict form in which the jury had to indicate whether it found Gilmore to be guilty as a principal or as an aider and abettor, and the jury marked "principal." Given the verdict form evidencing the jury's conviction of Gilmore as a principal, this court need not decide whether the aiding and abetting instruction was erroneous. Any error was harmless because it did not contribute to the verdict. *See United States v. Hamilton*, 587 F.3d 1199, 1218 (10th Cir. 2009) ("A constitutional error is harmless if it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." (quotations omitted)).

## C. Sufficiency of the Evidence

Lastly, Gilmore challenges the sufficiency of the evidence supporting his conviction. This court reviews a challenge to sufficiency of the evidence de novo, viewing the evidence in the light most favorable to the government. *United States v. Pulido-Jacobo*, 377 F.3d 1124, 1129 (10th Cir. 2004). To prove conspiracy, the government must show that (1) two or more persons agreed to violate the law, (2) the defendant knew at least the essential objectives of the conspiracy, (3) the defendant knowingly and voluntarily became a part of it, and (4) the alleged coconspirators were interdependent. *Id.*

The evidence presented at trial was more than sufficient to sustain Gilmore's conviction for conspiracy to distribute and possess with intent to distribute methamphetamine. As to the first element, an agreement to violate the law can be implied, rather than express. *United States v. Wardell*, 591 F.3d 1279, 1287 (10th Cir. 2009). Here, the jury could rationally infer an agreement to distribute methamphetamine based on evidence that Gilmore jointly traveled with Fitts and Funk to Garcia's residence where Fitts and Funk would obtain methamphetamine, Gilmore traveled with them to customers' houses where they would sell methamphetamine and collect money, and Gilmore was often present for these transactions. Moreover, Gilmore actively participated in some of these transactions by, at least on one occasion, collecting money on Fitts' behalf and on another, testing the methamphetamine to ensure its quality before Fitts

-10-

purchased it. Gilmore also brought a new customer to Fitts. This evidence, taken as a whole, is sufficient to permit a jury to infer an agreement to violate the law.

As to the second element, the government must prove the defendant knew of the common purpose of the conspiracy. *See United States v. Johnston*, 146 F.3d 785, 789 (10th Cir. 1998). Here, as alleged, the essential objective of the conspiracy was to distribute methamphetamine. The same evidence that supported the finding Gilmore agreed to violate the law is also sufficient for a jury to find Gilmore knew the essential objective of the conspiracy. Gilmore, moreover, testified that he knew Fitts, Funk, and Garcia were dealing methamphetamine and he knew the purpose of the trips to Garcia's house and to Fitts's customers' houses.

Third, a finding of knowing and voluntary participation can be premised on evidence of only slight participation, so long as that participation is established beyond a reasonable doubt. *Id.* Gilmore vigorously contests this element, arguing the evidence at trial merely established he was a drug user, not a member of the conspiracy. He specifically points to a lack of evidence that he personally sold drugs for money. He argues the conspiracy evidence was based only on his associations with conspirators and knowledge about the conspiracy, but that no evidence showed his intent to participate. *See Wardell*, 591 F.3d at 1288 (noting mere association is insufficient to demonstrate conspiracy). The

-11-

evidence presented at trial, however, forecloses Gilmore's argument. Evidence showed Gilmore's conduct was not limited to purchasing drugs and using drugs, but that he also facilitated drug purchases and sales by testing drugs, providing transportation, making contacts with clients, bringing in a new client, collecting money owed, and being present for transactions. This evidence is more than sufficient for a jury to find that Gilmore knowingly and voluntarily participated in the conspiracy.

In addition, Gilmore's assertion that there was no evidence introduced at trial that he personally distributed drugs is incorrect. First, a customer of Fitts's testified that he paid not only Fitts, but also Gilmore, for methamphetamine by stealing clothes and giving them to Gilmore in a size dictated by Gilmore. Fitts also testified that based on conversations with Gilmore himself, Fitts believed Gilmore was reselling some of the methamphetamine Fitts provided to him. Although not necessary to sustain his conviction for conspiracy, this evidence would allow a jury to find Gilmore himself distributed drugs.

Gilmore also testified that he "shared" methamphetamine with his girlfriend, friends, and acquaintances. But the question of whether and when mere "sharing" of drugs constitutes their "distribution" remains unresolved in this circuit. In *United States v. McIntyre*, 836 F.2d 467 (10th Cir. 1987), this court suggested sharing drugs would not be distribution. *See id.* at 471 (noting "[t]here [wa]s no indication that defendant was making a profit or distributing

-12-

cocaine when he merely shared his purchases with his friends present at the time of sale"). But, because that case was directly addressing what was sufficient evidence to prove a conspiracy to distribute, *see id.*, its suggestion that sharing would not be distribution is dicta. Later, in *United States v. Santistevan*, 39 F.3d 250 (10th Cir. 1994), this court noted generally that distribution does not require a sale, but only actual, constructive or attempted physical transfer of drugs from one person to another. *See id.* at 257 (applying 21 U.S.C.§ 802(8) and (11)). In *Santistevan*, however, the government argued only that an actual transfer had occurred and this court rejected that argument because there was no evidence that the defendant ever transferred physical possession of the drugs to another person. *See id.* at 257 & 258 n.10. Therefore, *Santistevan's* general statements about what constitutes distribution are also only dicta. Because we need not address here whether "sharing" drugs can constitute their "distribution," we leave resolution of that question for another day.

Finally, interdependence is present if the defendant facilitated the endeavors of other conspirators or facilitated the venture as a whole. *Wardell*, 591 F.3d at 1291. The facts already discussed are sufficient to support a jury finding on this element. Although Gilmore argues the use of his vehicle was provided in exchange for drugs, consistent only with Gilmore's status as an addict and desire to use drugs, not to distribute them, the jury was not required to take that view of the evidence. Specifically, evidence showed Gilmore's vehicle

-13-

was used heavily by Fitts and Funk, and testimony at trial indicated Gilmore was needed to complete transactions because he had a licensed and insured vehicle, which Fitts and Funk were lacking. Gilmore's further argument that Fitts and Funk were not dependent on Gilmore as evidenced by the comparatively few times that Gilmore took them to see Garcia in contrast to the approximately fifty times that they bought from her is also unavailing. At trial, witnesses repeatedly testified that Gilmore helped Fitts and Funk in a variety of ways to complete their purchases and sales of methamphetamine. Gilmore was also involved in efforts to collect money from Fitts's customers, a fact that alone would support a jury finding of interdependence. *Hamilton*, 587 F.3d at 1209-10. It was not necessary for the government to prove Gilmore was the crucial link without which the conspiracy could not have succeeded, but merely, as explained above, that he facilitated the endeavors of the conspiracy. The jury verdict was clearly supported by sufficient evidence that he did so.

## IV. Conclusion

For the forgoing reasons, Gilmore's conviction is **AFFIRMED**.

ENTERED FOR THE COURT


Michael R. Murphy
Circuit Judge